|  | O |
|---|---|
| UNITED STATES DISTRICT COURT | |
| CENTRAL DISTRICT OF CALIFORNIA | |
| WESTERN DIVISION | |

| DOUGLAS J. STEKKINGER, | Case No. CV 16-02681-DFM |
|---|---|
| Petitioner, | OPINION AND ORDER |
| v. | |
| R. NDOH, Warden, | |
| Respondent. | |

## I.
## BACKGROUND

### A. Procedural History

In November 2013, a jury convicted Douglas J. Stekkinger ("Petitioner") of elder abuse under circumstances likely to produce great bodily harm, assault by means of force likely to produce great bodily injury, and battery with infliction of serious bodily injury. See Lodged Document ("LD") 1 at 1-3.[1] As

---

[1] LD 1 through 8 refer to the Lodged Documents listed in the Notice of Lodging filed concurrently with Respondent's Opposition to Motion for Stay and Abeyance. Dkt. 18. The Reporter's Transcript ("RT") was lodged as LD 2. LD 9 and 10 were filed concurrently with Respondent's Answer. Dkt. 30.

to the elder abuse and assault convictions, the jury found true allegations that Petitioner had personally inflicted great bodily injury on a person who is 70 years of age or older. See id. at 2-3. Petitioner was sentenced to state prison for eight years. See id. at 8-9.

Petitioner appealed. In March 2015, the state appellate court affirmed the judgment in a reasoned decision on the merits. See LD 6. Petitioner did not file a petition for review in the state supreme court. See Dkt. 1 ("Petition") at 3. On April 19, 2016, Petitioner constructively filed the instant Petition, presenting four claims for relief:

1. The evidence presented at trial was insufficient to support the jury's finding that Petitioner did not act in self-defense ("Ground One").
2. The evidence presented at trial was insufficient to support the felony conviction for elder abuse ("Ground Two").
3. The evidence presented at trial was insufficient to support the enhancement for great bodily injury ("Ground Three").
4. The trial court committed reversible error in failing to instruct on lesser included offenses ("Ground Four").

Petition at 11-20. On April 26, 2016, the Court ordered Petitioner to file either a stay-and-abeyance motion under Rhines v. Weber, 544 U.S. 269 (2005), or respond in writing as to why his Petition should not be dismissed for failure to exhaust state remedies. See Dkt. 6. On July 25, 2016, Petitioner filed a Motion for Stay and Abeyance, see Dkt. 11, which the Court granted on March 20, 2017, see Dkt. 24.

On March 27, 2017, Petitioner presented Grounds One through Four in a habeas petition to the California Supreme Court. See LD 8. On June 28, 2017, that petition was summarily denied with citations to In re Waltreus, 62 Cal. 2d 218, 225 (1965), and In re Lindley, 29 Cal. 2d 709, 723 (1947). See LD 9. On August 31, 2017, the Court lifted the stay and ordered Respondent to file

a response. See Dkt. 27. On September 27, 2017, Respondent filed an answer to the Petition, see Dkt. 29 ("Answer"), and on November 27, 2017, Petitioner filed a reply, see Dkt. 32 ("Reply").

**B.     Summary of the Evidence Presented at Trial**

The underlying facts are taken from the California Court of Appeal's opinion on direct review. See LD 6; People v. Stekkinger, No. B255690, 2015 WL 1260573 (Cal. Ct. App. Mar. 18, 2015). Unless rebutted by clear and convincing evidence, these facts may be presumed correct. See Crittenden v. Chappell, 804 F.3d 998, 1011 (9th Cir. 2015); 28 U.S.C. § 2254(e)(1). Because Petitioner has raised claims of insufficient evidence, the Court has independently reviewed the record. See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).[2]

> In April 2012 Sean McGrath attended an Alcoholics Anonymous (A.A.) meeting at the Veterans Memorial Building in Santa Barbara. He was 71 years old and had been attending A.A. meetings at this location for at least 25 years. Petitioner came to the meeting with his dog. McGrath had not seen Petitioner or the dog at prior meetings. He knew that dogs are not allowed inside the building. When the meeting was over, McGrath said to Petitioner: "'There's no dogs allowed in the meetings, man.'"
>
> A few days later, Petitioner brought his dog to another A.A. meeting. At the start of the meeting, an announcement was made that pets are not permitted inside the building. When the meeting was over, McGrath said to Scott Lewis, "'Hey, . . . the pet is still here.'" McGrath and Lewis informed Petitioner that the owner of

---

[2] In all quoted portions of the California Court of Appeal's opinion, the Court has replaced Petitioner's name or "appellant" with "Petitioner."

3

the building does not allow dogs at meetings. Petitioner replied that he had been granted permission to bring the dog. Lewis responded, "'There's never been permission to do that here, you know.'" McGrath "might have said, 'That's bullshit,' and laughed at it." Petitioner became "very agitated." He "stomped out of the room" with his dog.

About a minute later, Petitioner approached McGrath without the dog. Petitioner's "face was kind of red. He was hot. He was pumped up." He "was like a gladiator getting ready to fight." He was "[l]ike a raging bull." Petitioner said to McGrath: "'Fucking old man, don't tell me what to do. You have no right.'" "'Where do you get off telling me I can't bring my dog into meetings? . . . That's a lot of bullshit.'"

Petitioner turned around and started to leave. McGrath "wanted him to stop and come back" so that he could explain the policy concerning dogs. McGrath "reached [out] to grab him on the shoulder and say wait a minute, don't leave." Lewis heard McGrath say: "Wait a second. Hang on. Just hear me out. Hear me out."

McGrath suddenly heard a "loud bang" inside his head. He "thought first something fell off the ceiling and hit me." Blood was coming out of his nose and mouth. It covered the "whole front" of his shirt. "[H]e was bleeding profusely." Blood was "all over the floor."

Petitioner had punched McGrath in the cheek. Lewis testified: "[Y]ou could hear the bone crushing instantly, just this huge pop sound of his face crushing." It was "[b]rutal." "It was a roundhouse. I was right there. I was within six inches of him."

4

"The sound of breaking bones startled me. The cracking of the cheekbone was powerful."

Another witness, Peter Novak, testified: "I saw [McGrath] put his left hand on Petitioner's right shoulder, and instantly Petitioner hit him as hard as he possibly could in the face." Before Petitioner hit McGrath, Novak heard McGrath say, "'Listen.'" "It sound[ed] like he [also] said 'motherfucker,' but it was kind of mumbled." Novak told a police officer that McGrath had said, "'Listen, motherfucker.'"

Lewis forced his body between Petitioner and McGrath. Lewis said to Petitioner, "Are you aware what you just did? You hit a senior citizen in the face with your fist. That's a felony in California." Petitioner responded, "'I don't care, he was choking me.'" Novak testified that McGrath had not choked Petitioner: "[McGrath] didn't have his hands on Petitioner's throat. He had one hand on his left shoulder and his thumb was touching the side of the neck slightly." Novak remembered the incident "really clearly, because it was literally two and a half to three feet from me."

An additional witness, Fredric Rifkin, recalled what he believed to be a "grabbing of the throat." On the other hand, Rifkin testified that, although he saw McGrath "reach out" toward Petitioner, he could not recall whether "there was actual contact." Later during his testimony, Rifkin said that McGrath had "pushed Petitioner on the chest, below the neck, with an open hand." Rifkin noted that he had memory problems: "I've got problems remembering what I had for breakfast today."

Petitioner did not testify. He called one witness, Cheryl

5

Giefer, who had been present at the A.A. meeting. She "heard a scuffling and yelling" and "turned around to witness [McGrath] standing in front of Petitioner." McGrath had blood on his shirt. He "was leaning in towards Petitioner" with "his finger pointed." McGrath said to Petitioner, "'You better watch your back, you just better watch your back.'" Petitioner replied, "'Man, keep your hands off me, man. Why did you put your hands on me, man?'"

Eight days after his injury, McGrath saw Dr. Robert Kiken, a maxillofacial surgeon. McGrath complained of facial pain and "had difficulty in opening his mouth because those muscles were bruised and sore." Dr. Kiken found that "the area of his cheekbone and the anterior wall of his maxillary sinus were crumbled." He also had a fracture "of the floor of the orbit, which is the bone that holds your eye above the sinus." Dr. Kiken testified: "The whole anterior wall of his sinus kind of crumbled, so it [the blow to McGrath's cheek] was a reasonably solid, well-directed blow that caused that to happen."

Dr. Kiken performed surgery on the injured area of McGrath's face. To reconstruct his cheekbone, he inserted three plates that were secured by 14 screws.

LD 6 at 2-4.

## II.
## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, federal courts may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or was based on an unreasonable

6

determination of the facts. 28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citation and quotations omitted).

Overall, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 16 (2013). The prisoner bears the burden to show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, a state-court "determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness" of that ruling. Id. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Federal habeas corpus review therefore serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (citation omitted).

Here, Petitioner raised Grounds One through Four on appeal to the California Court of Appeal and in a habeas petition to the California Supreme Court. The California Court of Appeal rejected Petitioner's claims in a reasoned decision on the merits, whereas the California Supreme Court denied Petitioner's habeas petition without explanation but with citations to Waltreus, 62 Cal. 2d at 225, and Lindley, 29 Cal. 2d at 723. Under the "look through" doctrine, Petitioner's claims are deemed to have been rejected for the reasons given in the last reasoned decision on the merits, which was the Court of Appeal's decision, and entitled to AEDPA deference. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991) (looking through California Supreme Court's Waltreus citation in habeas denial to the California Court of Appeal's reasoned

7

opinion on direct review); see also Magallon v. Harrington, No. 10-07296, 2012 WL 7009387, at *6 (C.D. Cal. Jan. 18, 2012) (looking through the California Supreme Court's "summary denial on habeas review" with citations to Waltreus and Lindley to the California Court of Appeal's reasoned rejection of the claims on direct appeal).

## III.
## DISCUSSION

### A. Procedural Default

Respondent argues that the California Supreme Court's citations to Waltreus and Lindley in denying Petitioner's state habeas petition is a state procedural bar precluding this Court from addressing the merits of Petitioner's claims. Because the merits of the claims can be easily resolved against Petitioner, the Court declines to address the procedural default issue in the interests of judicial economy. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

### B. Insufficient Evidence

In Grounds One through Three, Petitioner challenges the sufficiency of the evidence. See Petition at 11-28. Specifically, Petitioner contends that the evidence presented at trial was insufficient to support the jury's finding that he did not act in self-defense, his conviction for elder abuse, and the enhancement for great bodily injury.

#### 1. Applicable Law

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

8

of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In applying the Jackson standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law at the time that a petitioner committed the crime and was convicted. See id. at 324 n.16. The jury's credibility determinations are "entitled to near-total deference," Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004), and when the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution, Jackson, 442 U.S. at 326.

After AEDPA, federal courts must "apply the standards of Jackson with an additional layer of deference." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005); see also Boyer v. Belleque, 659 F.3d 957, 965 (9th Cir. 2011) (noting that when an insufficiency of the evidence claim is "subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted"). Even where a state court decision does not cite to or discuss the relevant Jackson standard, habeas relief is not warranted "'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent." Juan H., 408 F.3d at 1274 n.12 (quoting Early v. Packer, 537 U.S. 3, 8 (2003) (per curiam)); see also Coleman v. Johnson, 566 U.S. 650, 651 (2012) (holding that a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge only where the state court decision was "objectively unreasonable") (per curiam).

**2.    Ground One (Self-Defense)**

a.    Decision of the California Court of Appeal

The California Court of Appeal found that substantial evidence supported the jury's finding that Petitioner did not act in self-defense:

> "'To justify an act of self-defense . . ., the defendant must have an honest and reasonable belief that bodily injury is about to

> be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.]' [Citations.]" (People v. Minifie (1996) 13 Cal. 4th 1055, 1064-65.)
>
> Substantial evidence supports the jury's finding that Petitioner did not act in self-defense. McGrath and Novak testified that McGrath merely put his hand on Petitioner's shoulder without threatening to harm him. Lewis also did not hear McGrath utter any threats. Based on this evidence, a reasonable trier of fact could find beyond a reasonable doubt that Petitioner did not reasonably believe that McGrath was about to inflict bodily injury upon him. Petitioner's assault was apparently triggered not by a threat of imminent bodily injury, but by his anger at McGrath for insisting that he not bring his dog to A.A. meetings.

LD 6 at 5.

        b.    Analysis

There was sufficient evidence on which a rational trier of fact could have found that Petitioner did not act in self-defense. As detailed by the state appellate court, McGrath testified that he merely grabbed Petitioner's shoulder before Petitioner punched him in the face. RT 101-03. Lewis, who was also involved in the confrontation, described Petitioner as "agitated," "enraged," "really upset," "pumped up," "like a gladiator getting ready to fight," and testified that Petitioner "was dancing like Muhammad Ali" after he punched McGrath. RT 150-53, 158. Another witness, Peter Novak, testified: "I saw [McGrath] put his left hand on Petitioner's right shoulder, and instantly Petitioner hit him as hard as he possibly could in the face." RT 197. Petitioner

10

essentially asks the Court to reexamine the evidence at trial and reassess the jury's credibility determinations, which this Court may not do. See Jackson, 443 U.S. at 326. Petitioner is not entitled to habeas relief with respect to this claim of error.

### 3. Ground Two (Elder Abuse)

#### a. Decision of the California Court of Appeal

The California Court of Appeal found that substantial evidence supported the jury's finding that Petitioner knew or reasonably should have known that McGrath was an elder:

> In People v. Smith (1993) 13 Cal. App. 4th 1182, the defendant made the same contention as to a sentencing enhancement imposed pursuant to section 667.9, subdivision (a). The enhancement applied only if the defendant knew or reasonably should have known that the defendant was 65 years of age or older. In rejecting the defendant's argument that the evidence was insufficient, the court reasoned: "Here, the record shows that the evidence presented to the jury included [the victim's] physical appearance before the jury. Evidence was also presented that [the victim] was just three months short of her 68th birthday on the day of the robbery. We therefore presume, in support of the judgment, that the jury could reasonably deduce from its view of [the victim's] physical appearance that defendant reasonably should have known that she was at least 65 years old." (Id., at p. 1190.)
>
> As in Smith, here the victim—McGrath—also appeared before the jury. The trial occurred in November 2013, 19 months after the commission of the offense in April 2012. It is reasonable to infer that McGrath's appearance had not materially changed

during the 19–month interval. In any event, the trial court admitted into evidence photographs of McGrath's face taken shortly after the injury. "We therefore presume, in support of the judgment, that the jury could reasonably deduce from its view of [McGrath's] physical appearance [in court and in the photographs] that Petitioner reasonably should have known that [McGrath] was at least 65 years old." (People v. Smith, supra, 13 Cal. App. 4th at p. 1190.)

Furthermore, the jury could reasonably find that Petitioner actually knew that McGrath was at least 65 years old. Before the assault Petitioner said to McGrath, "'Fucking *old* man, don't tell me what to do.'" (Italics added.) Immediately after the assault, Lewis told Petitioner that he had committed a felony because he had "hit a senior citizen in the face." Petitioner did not show surprise or deny that he had hit a senior citizen. He responded, "'I don't care, he was choking me.'" Petitioner's response is an adoptive admission. "'"[A] typical example of an adoptive admission is the accusatory statement to a criminal defendant made by a person other than a police officer, and defendant's conduct of silence, or his words or equivocal and evasive replies in response. With knowledge of the accusation, the defendant's conduct of silence or his words in the nature of evasive or equivocal replies lead reasonably to the inference that he believes the accusatory statement to be true." [Citation.]' [Citation.]" (People v. Jennings (2010) 50 Cal. 4th 616, 661.)

LD 6 at 5-6.

      b.    Analysis

To be convicted of elder abuse under circumstances likely to produce

12

great bodily harm, a person must "know or reasonably should know that a person is an elder." People v. Racy, 148 Cal. App. 4th 1327, 1332-33 (2007) (citing Cal. Penal Code § 368(b)(1)). "Elder" is defined as any person 65 years or older. Cal. Penal Code § 368(g).

There was sufficient evidence on which a rational trier of fact could have found that Petitioner knew or reasonably should have known that McGrath was an elder. As noted by the appellate court, the jury saw photographs of McGrath taken shortly after the incident and could assess whether his appearance would lead Petitioner to reasonably know that McGrath was at least 65 years old. In addition, Lewis testified that Petitioner repeatedly called McGrath a "fucking old man." RT 154, 156.

Petitioner states he could not have known McGrath was an elder because he "engages in deep sea diving and works out daily in the gym." Petition at 15. Those activities are not exclusive with being over 65. Furthermore, there is no evidence in the record that Petitioner was aware of McGrath's activities prior to the incident. Petitioner is not entitled to habeas relief with respect to this claim of error.

### 4. Ground Three (Great Bodily Injury)

#### a. Decision of the California Court of Appeal

The California Court of Appeal found that substantial evidence supported the jury's finding that Petitioner inflicted great bodily injury on McGrath:

> Petitioner's blow caused substantial injury beyond that inherent in the charged offenses. McGrath sustained an orbital floor fracture. "[T]he area of his cheekbone and the anterior wall of his maxillary sinus were crumbled." The injury caused him to bleed "profusely" from his nose and mouth. For days after the injury, McGrath experienced "shooting pains, headaches." When

13

>McGrath saw Dr. Kiken eight days after the injury, he "had difficulty in opening his mouth because those muscles were bruised and sore." To repair the damage to McGrath's face, surgery was required. The surgery was not a simple matter. Dr. Kiken had to reconstruct McGrath's cheekbone. He inserted three plates that were secured by 14 screws. After the surgery, McGrath continued to have "headaches and [his] whole face would just contort."

LD 6 at 6-7.

      b.    Analysis

"[G]reat bodily injury" means "a significant or substantial physical injury." Cal. Penal Code § 12022.7(f). "[D]etermining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. People v. Cross, 45 Cal. 4th 58, 63-64 (2008) (citations omitted). Proof of a significant or substantial physical injury is commonly established "by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." Id. at 66.

Here, the jury heard evidence that Petitioner's blow broke several bones in McGrath's face and caused him to bleed profusely from his nose and mouth. RT 71. The injury was serious enough to require surgery, in which Dr. Kiken had to reconstruct McGrath's cheekbone with fourteen screws. RT 74-75. McGrath testified that he continues to have headaches and shooting pain. RT 114. This is sufficient evidence by which a rational trier of fact could have found that Petitioner inflicted great bodily injury on McGrath.

Petitioner argues that a broken bone is not "automatically" a "significant or substantial physical injury." Petition at 18. Even if true, under Jackson, the relevant question is not whether the evidence compels a finding, but whether it

14

is sufficient to sustain the finding. See Drayden v. White, 232 F.3d 704, 709-10 (9th Cir. 2000). Petitioner is not entitled to habeas relief with respect to this claim of error.

**C.     Ground Four (Instructional Error)**

In Ground Four, Petitioner contends the trial court should have sua sponte instructed the jury on lesser-included misdemeanor offenses. See Petition at 19-20. The California Court of Appeal disagreed: "Here, there is no evidence substantial enough to merit consideration by the jury that Petitioner committed merely a simple assault or battery or misdemeanor elder abuse under circumstances other than those likely to produce great bodily harm." LD 6 at 7-8 (citations omitted).

**1.     Applicable Law**

The issue of whether a jury instruction violates state law generally is not a federal question or a proper subject for habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To show a violation of due process, the petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction was fundamentally unfair. See id. at 72. The challenged jury instructions "must be considered in the context of the instructions as a whole and the trial record." Id.

A jury instruction violates due process if it fails to give effect to the requirement that the prosecution must prove every element of the offense. See Middleton v. McNeil, 541 U.S. 433, 437 (2004). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Id. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Even if it is determined that the instruction

violated the petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional instruction had a "substantial and injurious effect or influence" on the jury's verdict and thereby resulted in actual prejudice. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

**2. Teague**

Respondent argues that Petitioner's instructional error claim is precluded by the anti-retroactivity doctrine set forth in Teague v. Lane, 489 U.S. 288 (1989). See Answer at 24-26. Where a respondent properly raises a Teague argument, the Court must address it before reaching the merits of a petitioner's claim. See Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

Teague holds that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. There are two exceptions: (1) if the new rule would place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;" or (2) if it is a "watershed rule[] of criminal procedure." Id. at 311. A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 301. In deciding whether a constitutional rule is "new" for Teague purposes, the federal court may consider both Supreme Court and Ninth Circuit precedent. See Butler v. Curry, 528 F.3d 624, 635 n.10 (9th Cir. 2008).

The Supreme Court has never held that a defendant in a non-capital case has a constitutional right to a jury instruction on a lesser-included offense. See Hopkins v. Reeves, 524 U.S. 88, 96-98 (1998) (leaving matter of lesser-included offense instructions up to states). Nor does Ninth Circuit precedent provide support for such a rule. See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal

16

constitutional question."). Thus, Petitioner's claim that the trial court had a duty to instruct on lesser included offenses is <u>Teague</u>-barred. See <u>Turner v. Marshall</u>, 63 F.3d 807, 819 (9th Cir. 1995) (noting that the Ninth Circuit "has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case," and that to hold otherwise would create new rule in violation of <u>Teague</u>), <u>overruled on other grounds</u>, <u>Tolbert v. Page</u>, 182 F.3d 677 (9th Cir. 1999).

### 3. Merits

Habeas relief is not warranted on Petitioner's instructional error claim for several additional reasons. First, in the absence of Supreme Court authority holding that a defendant in a non-capital case has a constitutional right to jury instructions on a lesser-included offense, it cannot be said that the California Court of Appeal's rejection of the claim was contrary to or involved an unreasonable application of clearly established Supreme Court law. See <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1377 (2015) ("Because none of [the Supreme Court's] cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any [Supreme Court] holding." (citation omitted)) (per curiam).

Second, even assuming Ground Four was governed by clearly established federal law, habeas relief would not be warranted because the Court of Appeal reasonably concluded that substantial evidence did not support giving the lesser instructions:

> Here, there is no evidence "'"'substantial enough to merit consideration' by the jury"'"" that Petitioner committed merely a simple assault or battery or misdemeanor elder abuse under circumstances other than those likely to produce great bodily harm. (<u>People v. Wyatt</u>, <u>supra</u>, 55 Cal. 4th at p. 698.) Lewis testified that Petitioner had delivered a "[b]rutal," "roundhouse"

17

punch to McGrath's face. "[Y]ou could hear the bone crushing instantly, just this huge pop sound of his face crushing." Novak testified that he saw Petitioner hit McGrath "as hard as he possibly could in the face." Petitioner's punch "reminded [Novak] of . . . the movie 'Rocky,' where he's beating up the meat in the locker room." Novak continued: "I never seen [sic] anybody in my life get hit like that before." The power of Petitioner's blow is evidenced by the blood that poured from McGrath's nose and mouth and the extensive damage that it caused to McGrath's face.

LD 6 at 8.

The Court agrees with the findings and analysis of the Court of Appeal as it is well-supported by the record and governing law. Indeed, the record is replete with testimony describing the aggressive nature of the attack and the resulting injuries. Petitioner has failed to show that the Court of Appeal's rejection of the instruction claim was objectively unreasonable under the governing federal law.

Third and finally, even if the failure to instruct on the lesser-included offenses was erroneous, Petitioner cannot demonstrate that the error had a substantial or injurious effect in determining the jury's verdict. See Brecht, 507 U.S. at 637. Because the jury found true the allegations that Petitioner personally inflicted great bodily injury, the failure to give instructions on simple assault, simple battery, and elder abuse under circumstances or conditions other than those likely to produce great bodily harm and death did not actually result in prejudice.

///
///
///
///

18

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that the Petition is DENIED. Let judgment be entered dismissing this action with prejudice.

Dated: November 5, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge